UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELIAS GUDINO, | ) | CASE NO.   5:09CR00438 |
| | ) | 5:13CV00539 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Respondent. | ) | |
| | ) | |

The instant matter is before the Court upon Petitioner Elias Gudino's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. Doc. 55.  The petition is DENIED

**I. STANDARD OF REVIEW**

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

**II.   FACTS**

On October 7, 2009, Gudino was indicted, along with other co-defendants, for knowingly conspiring and agreeing to distribute and to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §841(a)(1), (b)(1)(A).  Doc. 7.  In addition, Gudino was also indicted for knowingly and intentionally possessing with intent to distribute approximately

1

eight kilograms of cocaine in the Akron, Ohio community.  Doc. 7.  Gudino hired Attorneys James Dorman and Brian Murray.  Doc. 6.  Gudino's primary language is Spanish, and Attorney Dorman is fluent in both English and Spanish and worked as an English-Spanish interpreter for several years.  Doc. 60 at Exh. A.

Gudino proffered to the Government in January of 2010.  The Government terminated the proffer believing "it was apparent [that] he was not being truthful – as measured against the evidence and other information in the government's knowledge/possession."  Doc. 55 at Exh. B.  On January 27, 2010, Gudino entered a plea of guilty to Counts 1 and 2.  Doc. 33.  Gudino acknowledged that a total offense level of 33 and a Criminal History Category I left him with a guideline sentencing range of 135 to 168 months.  Doc. 40.  As part of a plea agreement, the parties jointly agreed to recommend a sentence of at least 150 months of incarceration.  Doc. 33.  The parties also acknowledged that Gudino was subject to a mandatory minimum of 120 months. Doc. 33, 55, 60.

Subsequently, this Court then sentenced Gudino to 150 months of incarceration on May 12, 2010.  Doc. 44.  A certified translator was present to assist him in the plea colloquy and at sentencing.  Gudino later filed a motion to vacate under 28 U.S.C. §2255 on March 12, 2013.  Doc. 55.  Over a year later, Gudino filed a motion to reduce sentence under the amended sentencing guidelines.  Doc. 65.  This motion was granted, and Gudino's sentence was reduced to 120 months.  Doc. 73.

## III.    LAW AND ARGUMENT

Gudino asserts four grounds for relief.  Each ground is centered on a claim of ineffective assistance of counsel.  The standard for ineffective assistance is the two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, Gudino must show that his counsel's performance was deficient.  *Id.* at 687.  Counsel must not merely have erred, but erred so

"serious[ly] that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.*

Second, Gudino must show that his counsel's deficient performance actually prejudiced his defense. *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. In the context of guilty pleas, to establish prejudice under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Short v. United States*, 471 F.3d 686, 691-92 (6th Cir. 2006) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690, 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

Applying the principles of *Strickland* to the record before the Court, all grounds for relief are without merit:

**A.** **First Ground for Relief**:  **Defense Counsel failed to explain to Petitioner the purpose of a proffer, failed to prepare Petitioner for the proffer, and failed to accept and arrange a second proffer, which constituted ineffective assistance of counsel.**

In his first ground for relief, Gudino contends that he was deprived of effective assistance of counsel related to the proffer process.  Gudino argues that Attorney Dorman did not explain the purpose of the proffer or prepare him for the proffer process.  He also argues that Dorman was

3

ineffective for failing to arrange a second proffer with the Government.  Gudino's first claim lacks merit.

Gudino's claim fails on several grounds.  First, he has failed to demonstrate that his counsel's efforts with regard to the proffer fell short of the professional standard.  Attorney Dorman's sworn testimony states that he met with Gudino the day before the proffer to discuss and prepare specifically for the proffer process.[1]  Doc. 60-1 at ¶¶20-24. He met with Gudino for a total of six hours the day before the proffer and then Attorney Dorman again met with Gudino the day of the proffer.  During these sessions, Dorman discussed the "weight and gravity of the proffer session" and asked "…Gudino dozens of sample proffer questions in an effort to assist him [in] feel[ing] more comfortable with how the proffer session would work."  Doc. 60-1 at ¶20.  Gudino expressed reservations about participating in the proffer process but ultimately confirmed that he would proceed.  Doc. 60-1 at ¶24.

The evidence shows that the Government did not believe that Gudino was being truthful during the proffer session and it was stopped at least once so that Attorney Dorman "could discuss Mr. Gudino's responses with him and explain the gravity of failing to fully cooperate during a proffer."  Doc. 60-1 at ¶26.  The Government eventually stopped the proffer session, believing that Gudino was not being truthful.  Doc. 60-2 at ¶10; Doc. 60-2 at Attachment 2.

In addition to Dorman explaining the importance and procedure involved with a proffer, Gudino received and signed the proffer letter from the Government.  Doc. 60-2.  The letter explained that "[t]he purpose of the proffer is to enable the government to assess the credibility and value of the information to be provided by Mr. Gudino.  Therefore, it is of utmost importance that

---

[1] The Court will note that Attorney Dorman's affidavit contains a typo at paragraph 20.  The date reads "January 14, 2013;" however, the proffer took place on January 15, 2010.  The language of the affidavit states that: 1) the meeting was preparation for the proffer on January 15, 2010; 2) that Dorman was driving to Cleveland after the meeting on "January 14, 2010" when he turned around and returned for a second meeting with Gudino at the facility; and 3) that at this second meeting, Gudino instructed Dorman to prepare for the proffer, which would take place in the future on January 15, 2010.  As such, the Court considers the date of January 14, 2013 to be a clerical error intending to convey that the meeting took place on January 14, 2010.

4

the proffer be _complete_ and _truthful_.”  Doc. 60-2 (emphasis in text).  The letter continued to explain the “ground rules for the proposed discussion” between Gudino and the Government.  It stated that no consideration would be given as to Gudino’s charges until after the proffer was evaluated.  Doc. 60-2 at Attachment 1.  It also outlined that no statement made by Gudino during the proffer would be used against him in any criminal case so long as it did not involve Gudino’s commission of a crime of violence or was false.  Finally, the letter stated: “[I]t is understood that no additional promises, agreements or conditions have been entered into other than those contained in this letter, and none will be entered into unless set forth in writing and signed by all parties.”  Doc. 60-2. Gudino signed the acknowledgment at the end, which states:

> I have read the foregoing proffer letter, dated January 15, 2010, consisting of two (2) typewritten pages, discussed it’s [sic] content and consequences with my attorney and I expressly accept the conditions stated herein.

Doc. 60-2 at Attachment 1.

Gudino’s signature on the acknowledgement confirms Attorney Dorman’s testimony that he sufficiently discussed the proffer with Gudino to allow him to understand and accept the conditions of the proffer.  There is nothing in the record to suggest that Gudino did not understand the letter, its meaning, or the impact it would have on his case, and certainly if Gudino needed an interpreter other than Attorney Dorman (a previous court interpreter himself), he was free to refuse to sign the letter and seek additional assistance.

Finally, Gudino signed the plea agreement in this case, which states: “The defendant further declares that he is fully satisfied with the effort, assistance and counsel provided by his attorneys.” Doc. 33 at ¶18.  During the plea colloquy, with the assistance of an interpreter, Gudino testified as follows:

> THE COURT:          Have you had a full opportunity to discuss your case and all the matters related thereto with your attorney?
>
> DEFENDANT:          Yes, Your Honor.
>
> THE COURT:          Are you satisfied so far with his advice, his counsel, his representation of you in this case?
>
> DEFENDANT:          Yes.

Doc. 49 at 4-5.  Once again, Gudino had an opportunity to express his concern about Attorney Dorman or seek different counsel.  In fact, along with Dorman, Attorney Murray represented Gudino during the proffer, plea, and sentencing process.  At no time has Gudino alleged that Murray's counsel was deficient to Gudino's prejudice.

Furthermore, Gudino acknowledges that he met with Attorney Serrat after the failed proffer, and Attorney Serrat then suggested pursuing a second proffer.  Gudino ultimately did not retain Serrat to pursue a second proffer or to represent him for the remainder of his case.  Failing to hire a different attorney contradicts Gudino's argument now that he always had concerns about Dorman's qualifications and the sufficiency of his representation. Given all of this, there is no evidence in the record that rebuts the strong presumption that Attorney Dorman rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Even if Gudino could rebut the presumption of adequate assistance, he also fails to demonstrate prejudice.  The only relief Gudino seeks in his habeas petition is a sentence reduction to the mandatory minimum of 120 months of incarceration.  Doc. 55.  On December 14, 2015, this Court granted Gudino's motion to reduce his sentence as a result of Amendment 782 to the U.S. Sentencing Guidelines.  Doc. 73.  The Court amended the judgment to impose a reduced sentence of

120 months.[2]  As such, Gudino can establish no prejudice in his claim for ineffective assistance of counsel.  His first ground of relief is without merit.

### B. Second Ground for Relief:  Counsel agreed to a sentence above the mandatory minimum and above the low end of his guideline range to devastating results.

In his second ground for relief, Gudino seems to blame Attorney Dorman for Gudino's acceptance of a plea agreement that specified 150 months as a minimum sentence. However, Gudino ignores the fact that he, himself, stated that he understood and agreed to the 150-month plea deal:

> THE COURT:  Now, in this case, we have something a bit unusual, and that is, even though the advisory guideline range is 135 to 168 months, the parties have agreed to recommend to the Court that I impose a sentence of no less than – or of at least 150 months. And that is what you and your attorney and the government's attorney have agreed to recommend to me, that I impose a sentence not – excuse me, I'll restate it, at least 150 months.
>
> Do you understand that is the agreement and that is the recommendation that is being made to me **by you**, your attorney, and the government's attorney?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT: Do you understand in this case the Court, even though I will strongly consider that recommendation, I still have the discretion to impose a sentence anywhere from 120 months… to life imprisonment.  That is within my discretion.
>
> Do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.

---

[2] Gudino argues in his motion for sentence reduction that a reduced sentence to 120 months does not waive his habeas arguments.  He asserts that he was still prejudiced by Attorney Dorman's representation because Gudino believes that the Government did and/or would have offered him 41 to 57 months – well below the mandatory minimum – and that any reduction under the Amended Guidelines would be a reduction from the 41 to 57 months.  Gudino did not file a supplemental habeas petition after securing the reduction to include this argument.  However, even if he did, the Government denied that it ever offered such a severely reduced sentencing range.  Doc. 60-2 at ¶9.  Even if it had, the Court was under no obligation to abide by the reduced range.  Finally, "[i]t has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel."  *Brown v. United States,* 75 F.Supp.2d 345, 355 (D.N.J. 1999) *aff'd.* 45 F.App'x 92 (3rd Cir. 2002).

7

THE COURT:  With regard to the matter, sir, that is, again, the advisory guideline range, I'll just repeat it, in this case would be 135 to 168 months.  I will have that to consider.  And the parties recommend 150 months which, again, I will strongly consider as well.

Counsel, have I misstated in any way the parties' agreement and the advisory guideline computation?

MR. YANNUCCI:  No, Your Honor.

THE COURT:  Sir?

MR. DORMAN:  No, Your Honor.

THE COURT:  Do you have any questions, sir, about the possible sentence the court can impose?

THE DEFENDANT:  No, Your Honor.

Doc. 49 at 11-13 (emphasis added).

Gudino now attempts to distance himself from his own decision to accept the 150-month plea deal.  However, as described earlier, he admitted during the plea colloquy that he was satisfied with his attorney's advice and that he voluntarily entered into the plea.  Doc. 49 at 4-5, 11-13. Although the plea may have been unusual, this fact alone does not make Attorney Dorman's representation ineffective.  Instead, as acknowledged above, the advisory guidelines at the time of sentencing were 135 to 168 months – so Gudino still received a significant benefit by accepting the plea agreement at 150 months.

What is more, his sentence was later reduced to 120 months.  Gudino has never, at any stage of these proceedings, indicated that he would have proceeded to trial but for the alleged deficient performance of his counsel.  Thus, he cannot demonstrate prejudice resulting from Dorman's representation.  Given all of this, he cannot satisfy either prong in *Strickland*.  Gudino's second ground for relief is without merit.

8

**C. Third Ground for Relief:  Defense Counsel misrepresented his experience in the Federal Court system to Petitioner and his family, which constituted ineffective assistance of counsel.**

Gudino believes that he was Attorney Dorman's first federal case and that Dorman did not expressly state this fact to Gudino or his family when they tried to elicit his experience.  Gudino argues this failure to disclose makes Dorman's representation ineffective.  Whether Gudino was Dorman's first federal case or not bears no relevance on whether Dorman's representation was deficient, let alone denied Gudino the counsel guaranteed under the Sixth Amendment.  What is more, Gudino seems to argue that, throughout Dorman's representation, both Gudino and his family suspected that Dorman lacked the experience they preferred; yet, at no time did Gudino terminate the attorney-client relationship.  In fact, Gudino had an opportunity to hire another attorney, Mr. Serrat, but chose not to do so.  Instead, Gudino testified under oath at the plea colloquy that he was "…satisfied …with [Dorman's] advice, his counsel, his representation…in this case."  Doc. 49 at 4-5.  Gudino cannot overcome the strong presumption that Attorney Dorman rendered adequate assistance of counsel.

Furthermore, in the context of guilty pleas, to establish prejudice under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Short*, 471 F.3d at 691-92.  Despite Dorman's alleged lack of federal experience, Gudino never argues that he would have insisted on going to trial if he knew he was Dorman's first federal case.  Any lack of experience could have been mitigated by the presence of Attorney Murray as co-counsel, and finally, Gudino received a sentence reduction to the mandatory minimum of 120 months.  Given all of this, Gudino cannot establish any prejudice resulting from Attorney Dorman's representation.  Gudino's third ground for relief is without merit.

9

**D. Fourth Ground for Relief:  Counsel failed to properly communicate and translate crucial documents, such as the plea agreement and the presentence investigation report to Petitioner who is only fluent in Spanish.  Due to the language barrier, Mr. Gudino was unable to understand his case and the consequences of certain actions.**

In the introduction to his memorandum in support of his habeas petition, Gudino articulates a fourth ground for relief.  However, Gudino never presents any law or argument on this issue.  As such, the Court cannot act further and finds that the fourth ground for relief is without merit.

## IV. CONCLUSION

For the foregoing reasons, Petitioner Elias Gudino's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is hereby **DENIED.**

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Dated: March 15, 2016                    */s/ John R. Adams*
                                          **JOHN R. ADAMS**
                                          **UNITED STATES DISTRICT JUDGE**

10